IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Juanita Barfield, | ) | Civil Action No.: 9:12-cv-2086-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court after the issuance of the Report and Recommendation ("R & R") of United States Magistrate Judge Bristow Marchant.[2] Plaintiff Juanita Barfield ("Plaintiff" or "Barfield") brought this action pursuant to 42 U.S.C. §405(g), to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB"). In his R & R, the Magistrate Judge recommends affirming the decision of the Commissioner.

### FACTUAL FINDINGS AND PROCEDURAL HISTORY

The plaintiff filed an application for DIB on November 2, 2008, alleging a disability onset date of August 25, 2007, due to problems with her knees, ankles, and hearing. (R. pp. 112–15, 132, 195.) After her application was denied initially and on reconsideration, she requested a hearing before an administrative law judge ("ALJ"). The hearing before the ALJ was held on September 9, 2010. (R. pp. 26–60.) The ALJ issued an unfavorable decision on October 29, 2010. (R. pp. 9–

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this lawsuit.

[2] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to the Magistrate Judge for pretrial handling.

19.)  The Appeals Council denied the plaintiff's request for review of the ALJ's decision, thereby making the ALJ decision the Commissioner's "final decision" for purposes of judicial review.  *See* 42 U.S.C. §405(g); 20 C.F.R. §404.981 (2003).  The ALJ's overall findings were as follows:

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2010.
>
> 2. The claimant did not engaged in substantial gainful activity during the period from her alleged onset date of August 25, 2007 through her date last insured of September 30, 2010 (20 C.F.R. 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe combination of impairments: obesity; osteoarthritis, right knee; hypertension; right ankle status post ankle fracture; right knee status post arthroscopic surgery; lateral left tibial plateu fracture, left fibular fracture; small medial malleolar avulsion fracture and bilateral hearing loss (20 C.F.R. 404.1520(c)).
>
> . . .
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).
>
> . . .
>
> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a range of sedentary work as defined in 20 C.F.R. 404.1567(a). I find the claimant can lift/carry 10 pounds frequently. She can walk and stand for two hours, each, of an eight hour workday. The claimant can sit for six hours of an eight-hour workday. She should never climb ropes, ladders and scaffolds. She can occasionally crouch, balance, stoop, climb, kneel and crawl.  The claimant is limited to frequent pulling and pushing with her right lower extremity. She should avoid work requiring constant communication and hearing in crowded areas, and might have possible problems with directional source hearing, but will have minimal problems when her hearing aids are fixed. She should avoid even moderate exposure to noise, and should avoid concentrated exposure to hazards.
>
> . . .

> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. 404.1565).
>
> . . .
>
> 7. The claimant was born on March 12, 1962 and was 48 years old, which is defined as a younger individual age 45–49, on the date last insured (20 C.F.R. 404.1563).
>
> 8. The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. 404.1569 and 404.1569(a)).
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 25, 2007, the alleged onset date, through September 30, 2010, the date last insured (20 C.F.R. 404.1520(g)).

(R. pp. 9–19.)

The ALJ's finding became the final decision of the Commissioner when the Appeal's Council denied Plaintiff's request for further review. On July 25, 2012, Plaintiff filed this action seeking judicial review of the Commissioner's decision. *See* Compl., ECF No. 1. Both Plaintiff and the Commissioner filed briefs, *see* ECF Nos. 11, 12, 13, and the Magistrate Judge issued his Report and Recommendation on September 11, 2013. *See* R & R, ECF No. 16. Plaintiff timely filed objections to the R & R on September 20, 2013. *See* Pl.'s Objs., ECF No. 17. Defendant replied to the objections on October 28, 2013. *See* Reply, ECF No. 22.

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  Section 405(g) of the Act provides: "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964); *see also Daniel v. Gardner*, 404 F.2d 889, 890 n.1 (4th Cir. 1968); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Tyler v. Weinberger*, 409 F. Supp. 776, 784 (E.D. Va. 1976) (same).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

This standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner.  *See, e.g.*, *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968).  "[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (citations omitted).  As noted by Judge Sobeloff in *Flack v. Cohen*, 413 F.2d 278 (4th Cir. 1969), "[f]rom this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted.  The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id.* at 279.  "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58 (citations omitted).

Furthermore, a *de novo* review is conducted of the Magistrate Judge's R & R.  28 U.S.C. 636(b)(1).  The Magistrate Judge makes only a recommendation to the court and has no presumptive weight; indeed, the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).  The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed.  *Id.*  However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).   In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error.  *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### DETERMINATION OF DISABILITY

Under the Act, Plaintiff's eligibility for the benefits she is seeking hinges on whether she is under a "disability."  42 U.S.C. § 423(a).  The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  *Id.* § 423(d)(1)(A).  "The ultimate burden to prove disability lies on the claimant."  *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985).  A claimant may establish a *prima facie* case of disability based solely upon medical

5

evidence by demonstrating that her impairments meet or medically equal the listed impairments set forth in Appendix 1 of Subpart P. 20 C.F.R. § 404.1520(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. § 404.1560(b). These factors include the claimant's (1) "residual functional capacity," *id.* § 404.1560; (2) age, *id.* § 404.1563; (3) education, *id.* § 404.1564; (4) work experience, *id.* § 404.1565; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id.* § 404.1560. If the assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id.* § 404.1560. The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. § 404.1520, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether she suffers from some physical or mental impairment, (3) whether that impairment meets or medically equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents her from returning to her previous work, and (5) whether the impairment prevents her from performing some other available work.

**DISCUSSION**

The Magistrate Judge recommends affirming the decision of the Commissioner, and finding that the decision was supported by substantial evidence. *See* ECF No. 16 at 13. Specifically, the Magistrate Judge concludes: (1) that Plaintiff's argument that the ALJ failed to properly consider Dr. Patel's opinion, and failed to point to any significant opinions or evidence that contradicted Dr. Patel's opinion, is without merit; (2) that there was no indication that the ALJ failed to properly weigh Dr. Rolands' opinion and no reversible error with the ALJ's consideration and treatment of Dr. Rolands' examination notes in conjunction with the other evidence when arriving at a Residual Functional Capacity ("RFC"); and (3) Plaintiff's argument that the ALJ did not properly assess her manipulative and repetitive use limitations is without merit. *See id.* at 9–12.

Plaintiff objects to the Magistrate Judge's recommendations. First, she argues that the Magistrate Judge improperly affirmed where Dr. Pranay Patel, a consulting physician, expressed an uncontradicted opinion that Plaintiff had limitations that would prohibit work and the ALJ did not weigh this opinion. ECF No. 17 at 1–11. Second, Plaintiff contends that the Magistrate Judge improperly affirmed because Dr. Gerald Rollins also expressed an uncontradicted opinion that Plaintiff had wrist limitations, which was not weighed, and the ALJ's reasons for discounting this opinion were either not well based factually or logically. *Id.* at 11–13. Finally, Plaintiff asserts the Magistrate Judge improperly affirmed because the ALJ failed to include in the RFC any limitations resulting from Barfield's wrist impairment and failed to provide an adequate discussion to support his finding. *Id.* at 13–14.

**I.     Dr. Patel's Opinion**

Plaintiff claims that the ALJ erred by "failing to mention, interpret, or weigh one critical portion of Dr. Patel's conclusion, that is, his conclusion that Barfield could not stand or walk, or, stand or walk except briefly . . . ."  ECF No. 17 at 2.  Plaintiff objects to the Magistrate Judge's determination that it was acceptable for the ALJ to overlook this because there was substantial evidence in the record that Barfield can stand and walk sufficiently to work.  *Id.*  She claims that there is enough evidence in the record supporting Dr. Patel's opinion such that, if the ALJ had adopted the finding, the Court would not reverse for lack of evidence.  *Id.* at 6.  Finally, Plaintiff argues that the Magistrate Judge mistakenly conducted his own review of the evidence and made determinations regarding the weight of Dr. Patel's opinion, which should have been made and explained by the ALJ.  *Id.* at 10.

The Commissioner replied to this objection, asserting that the Plaintiff's objections rely on flawed analysis to support her position.  *See* ECF No. 22 at 1.  In particular, Defendant argues that the Magistrate Judge properly addressed Plaintiff's challenges regarding the ALJ's evaluation of Dr. Patel's findings and found them without merit.  *Id.* at 2.  Moreover, Defendant argues that the Magistrate Judge reasonably found the ALJ's conclusion that Plaintiff could perform sedentary work with restrictions on standing and walking was consistent with Dr. Patel's findings.  *See id.*  In particular, Defendant notes that Plaintiff herself told Dr. Patel that she could not stand "for a long period of time" and could not walk "long" distances.  *Id.* (quoting R. pp. 367.)

The Court agrees with Defendant's argument as set forth in its reply.  As the Magistrate Judge correctly explained, Dr. Patel's report clearly states in the "History of Present Illness" portion that Plaintiff "cannot stand *for a long period of time*" and "cannot walk *long distances*."  (R. p. 367 (emphasis added).)  His physical examination, conducted in February 2009, determined that she

8

"walks with a slight limp because of pain." (R. p. 369.) Only at the very end of his report, in the "Plan" portion, does he briefly mention that "[a]s she cannot stand or walk, she may be need to be trained for some type of desk job." (R. p. 370.) The Court agrees with the Magistrate Judge that there is no indication that the phrase "as she cannot stand or walk" was meant to imply that she could not do so at all. *See* ECF No. 16 at 6. Therefore, the Court rejects Plaintiff's argument that the ALJ "ignored" this purported evidence.

If this statement was to be taken literally, it would be contrary to the other evidence in the record. As previously noted, Plaintiff herself informed Dr. Patel that she could stand and walk with limitations. This is consistent with her function report from December 2008 in which she wrote that she "can't stand long, walk long distance." (R. p. 188.) Notably, in the function report Plaintiff indicated that she could ambulate without need of crutches, walker, or a cane. (R. p. 193.) Moreover, two additional physicians who examined her, a Dr. Rolands in 2007 and a physician from Othropedic Associates[3] in 2010 both indicated that Plaintiff had a "normal" gait. (R. pp. 328, 404.)

The Court agrees with the Magistrate Judge that, after reviewing these records and opinions, the ALJ found that the evidence as a whole did not establish a complete inability to stand or walk. As the Magistrate Judge explained in the R & R, the ALJ extensively discussed Dr. Patel's findings in his decision. *See* ECF No. 16 at 6 (R. pp. 12, 15.). The phrase which Plaintiff seeks to have the Court examine in a vacuum simply is not supported by the record. In any event, the Court finds the ALJ's conclusion that Plaintiff could perform sedentary work with restrictions on standing and walking is consistent with Dr. Patel's findings. In fact, he specifically stated in his report that she may "need to be trained for some type of desk job." (R. p. 370.) Accordingly, the Court finds that

---

[3] This physician's appears to be a Dr. Stephen Harley. (R. p. 405.)

the ALJ's decision was supported by substantial evidence. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). As the Magistrate Judge noted, if anything the ALJ gave the Plaintiff a more restrictive RFC than what the State Agency Physicians found. *Compare* (R. p. 16) *with* (R. pp. 371–78, 386–93.)

## II.     Dr. Rolands[4]

Plaintiff lodges a similar objection with regard to a portion of Dr. Rolands's opinion which she also claims the ALJ ignored. ECF No. 17 at 12. Plaintiff asserts that the Magistrate Judge erred in failing to address her argument that the ALJ did not consider the totality of Dr. Rolands's opinion and explain why certain portions were discounted. *Id.* at 12. Plaintiff argues that Dr. Rolands was a treating physician,[5] and that the ALJ failed to consider his assessment that Plaintiff had "vague left wrist pain due to overuse secondary to her job" and that he did not think there was a treatment which "would make her wrist hold up to repetitive work." (R. pp. 327–29.)

Defendant replied to this objection, asserting that the Magistrate Judge reasonably found that Plaintiff's challenges to the ALJ's consideration of Dr. Rolands findings were without merit. ECF No. 22 at 3. Defendant notes that Dr. Rolands himself stated that his examination of her wrist "was essentially unremarkable, with full range of motion and good grip strength being found, and negative for findings consistent with carpal tunnel." (R. p. 328.) Moreover, he did not indicate any specific limitation aside from the fact that the left wrist "gives her trouble with repetitive movement that she does on her job." (R. p. 327.) Finally, Defendant points out that the ALJ specifically stated

---

[4] As the Magistrate Judge noted, although the parties refer to this physician as "Rolands" in their briefs, it is possible his name is Rollins. *See* (R. p. 327.)

[5] Although Plaintiff was seen by his practice group, Orthopedics Associates, several times, there is only one citation to the record where Plaintiff was actually seen by Dr. Rolands. (R. pp. 327–29.). Therefore, it is unclear on what basis Plaintiff claims he is a treating physician.

"I have considered problems [Plaintiff] has experienced with her wrists and hands in imposing lifting restrictions in the residual functional capacity."  (Tr. 14.)

The Court agrees with the Magistrate Judge that there is no indication that the ALJ failed to properly weigh Dr. Rolands's findings.  The ALJ specifically noted that he considered Plaintiff's wrist problems in reaching his determination, and the Court finds that the ALJ's determination was consistent with Dr. Rolands exam.  The wrist problems noted in his report were based on Plaintiff's self-report, and they were only in relation to the job she used to hold.  *See* (R. p. 327.)   Plaintiff argues that the ALJ failed to consider that Dr. Rollins opined that he did not think he had any treatment for Plaintiff that "would make her wrist any better or hold up to repetitive work."  ECF No. 17 at 11.  However, this is not the entirety of his finding, as the full statement indicates that he did not have a treatment which could help the wrist "hold up to the repetitive work *that she does*." (R. p. 329.)  He did not indicate that she could not do any repetitive work at all, only that he was not aware of any treatment that would allow Plaintiff's wrist to hold up in her present job.

The ALJ's findings were further supported by the fact that Plaintiff did not list any restrictions on the use of her hands in her function report, stating only that lifting over ten pounds made her wrist hurt.  (R. p. 192.)  Furthermore, she did not indicate that her wrist problems were disabling in the function report.  The ten poud lifting capacity is within the sedentary RFC found by the ALJ, and it is clear that the ALJ accounted for Plaintiff's wrist problems by imposing a lifting restriction of no more than ten (10) pounds.  *See* (R. pp. 12, 14, 16, 192.)  The Court agrees that there is no reversible error in the ALJ's consideration and treatment of Dr. Rolands's examination notes in conjunction with the other evidence when arriving at an RFC for Plaintiff's wrist complaints.  *See* ECF No. 16 at 11.  The ALJ's determination was supported by substantial evidence.

11

**III.    RFC Assessment**

Finally, Plaintiff also objects on the basis that the RFC failed to include any limitations related to Barfield's wrist impairment, and that the ALJ failed to provide an adequate discussion to support his findings.  *See* ECF No. 17 at 13–14.  Essentially, Plaintiff objects to the Magistrate Judge's determination that the ALJ's RFC adequately accounted for her medical impairments, particularly the wrist issues.  *See id.*

Defendant replied, arguing that the record evidence does not support Plaintiff's claims that her "manipulative" and repetitive use limitations were disabling.  *See* ECF No. 22 at 5.  Defendant argues that substantial evidence supports the ALJ's RFC determination and that the Magistrate Judge reasonably held that Plaintiff's argument about her "manipulative" and repetitive use limitations are meritless.  *See id.*

The Court again agrees with the Magistrate Judge's analysis as set forth in the R & R, and overrules Plaintiff's objection.  As the Magistrate Judge correctly explained, the ALJ's decision reflects a careful review of the evidence and includes extensive analysis with regard to how he arrived at the RFC.  There is no indication of any manipulative restrictions in either Dr. Rolands's or Dr. Washington's report.  *See* (R. p. 328, 336.)  Moreover, as the Court discussed extensively in Part II, the RFC was consistent with the findings of Dr. Rolands with regard to the purported repetitive use problems.   Therefore, the Court finds that the ALJ's RFC determination was supported by substantial evidence.

## CONCLUSION

The Court has thoroughly reviewed the entire record as whole, including the transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's reply to the objections, and applicable law.  For the reasons set forth above, the Court hereby overrules

Plaintiff's objections and adopts and incorporated by reference the Report and Recommendation of the Magistrate Judge. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

                                              s/ R. Bryan Harwell
                                              R. Bryan Harwell
                                              United States District Judge

March 27, 2014
Florence, South Carolina